UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHIRLEY A. STEWART,                    )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )          No. 3:20-cv-033-DCP
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 17 & 18] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 21 & 22].    Plaintiff subsequently filed a Response [Doc. 23] to Defendant's

motion.  Shirley A. Stewart ("Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").

For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the

Commissioner's motion.

## I.    PROCEDURAL HISTORY

On March 29, 2017, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq.*, claiming a period of disability that began

on February 10, 2017. [Tr. 15, 207–14, 233].[1] After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 167–68]. A hearing was held on September 26, 2018. [Tr. 41–59]. On February 6, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 15–27]. The Appeals Council denied Plaintiff's request for review on January 3, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 21, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 10, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: dysfunction major joint osteoarthritis, diabetes mellitus with diabetic neuropathy, obesity and major depressive disorder with psychotic features and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] The Commissioner and the ALJ's disability decision both note that this is Plaintiff's third application for benefits, but the ALJ declined to reopen any of Plaintiff's previous applications. [Tr. 15]; *see* [Doc. 22 at 2].

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry, push and pull 20 pounds occasionally and five pounds frequently. The claimant can sit six hours of an eight-hour day and stand and/or walk for three hours of an eight-hour day. The claimant can frequently reach, handle and finger with the left upper extremity. The claimant can frequently climb ramps and stairs, but can never climb ladders, ropes and scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to extreme cold, and workplace hazards such as dangerous machinery and exposed heights. The claimant can never have contact with the public, and occasionally have contact with co-workers and supervisors. The claimant can understand, remember and carry out simple instructions and tasks, where workplace changes are occasional and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 10, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–26].

3

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

4

229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

5

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

### A. Listing 12.04

Plaintiff asserts that the ALJ's finding that none of her impairments met or equaled the requirements of Listing 12.04 is not supported by substantial evidence. Plaintiff challenges the

6

ALJ's finding that she had moderate limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself, as she maintains that the ALJ's findings are contradicted by the opinion of consultative examiner Derek Hopko, Ph.D. [Doc. 18 at 6]. Plaintiff also claims that the ALJ's stated reasoning for finding solely moderate limitations for the paragraph B criteria are not supported by the medical record. [*Id.* at 7–13].

The Commissioner responds that the ALJ identified substantial evidence to support her conclusions in the remaining paragraph B criteria. Additionally, the Commissioner responds to Plaintiff's arguments regarding the assessed moderate limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. [Doc. 22 at 6–15]. Plaintiff replies that she has met her burden to show that her mental impairments met the requirements of Listing 12.05. [Doc. 23 at 1]. Plaintiff also claims that the ALJ and the Commissioner mischaracterize the medical record regarding her activities of daily living, such as her ability to attend doctor's appointments. [*Id.* at 1–6].[2]

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that her impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the

---

[2] The parties do not challenge the ALJ's assessed marked limitations in concentrating, persisting, or maintaining pace.

7

claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health &
Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when
an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing
level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with
comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of
Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted
articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F.
App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she
can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*,
413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close
to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.
1989) (affirming Commissioner's decision that Plaintiff didn't meet applicable Listing where
medical evidence "almost establishes a disability"). Plaintiff has the burden of proving that her
impairments meet or medically equal the criteria of Listing 12.04 by pointing to specific medical
findings that satisfy all of the criteria of the listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x
430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5
(E.D. Tenn. Jan. 23, 2014) (citations omitted).

Listing 12.04 addresses depressive, bipolar and related disorders. Applicable listings
addressing mental health impairments contain the following criteria: (1) "Paragraph A" criteria,
impairment-related symptoms; (2) "Paragraph B" criteria, impairment-related limitations; and (3)
"Paragraph C" criteria, additional functional criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§
12.00(A), 12.04. A claimant can meet the requirements of Listing 12.04 only if she satisfied either:

8

(1) the criteria of both Paragraphs A and B; or (2) the criteria of Paragraph C. *See Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 372 (6th Cir. 2017). Here, Plaintiff claims that the ALJ improperly found that her impairments did not meet or equal the "paragraph B" criteria; thus, the Court will focus its analysis on the applicable impairment-related limitations. *Id.*

"The common functional limitations criteria in Paragraph B of Listing[ ] 12.04 . . . require[s] the claimant to show that [her] disorder(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself." *See Sanders v. Comm'r of Soc. Sec.*, No. 1:18-CV-1941, 2019 WL 2570494, at *12 (N.D. Ohio June 5, 2019) (internal citations omitted), *report and recommendation adopted sub nom.*, *Sanders v. Saul*, 2019 WL 2567718 (N.D. Ohio June 20, 2019); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

In the disability decision, the ALJ found that Plaintiff's major depressive disorder with psychotic features and anxiety qualified as severe impairments. [Tr. 18]. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. [Tr. 18–21]. The ALJ specifically addressed Listing 12.04 and found that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation under the paragraph B criteria. [Tr. 20]. First, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information. [Tr. 19–20]. The ALJ noted that Plaintiff testified that she lived alone, that she was able to attend doctor's appointment on an independent basis, and that she had a valid driver's license but chose not to drive on a regular basis. Additionally, the ALJ reviewed that Plaintiff received help from family with mopping, taking out the trash, and grocery shopping; as well as that she reported an

9

inability to follow instructions, but was able to perform household chores—including light meal preparation, cleaning, dusting, and dishwashing.

Next, the ALJ found that Plaintiff had moderate limitations in interacting with others. [Tr. 20]. The ALJ noted that Plaintiff testified that she did not get along well with other people, but the ALJ also detailed that Plaintiff had a good relationship with her family and relied on them for assistance with household chores, as well as that she relied on her social worker for transportation to doctor appointments and grocery shopping in stores. Further, the ALJ reviewed that Plaintiff reported that her anxiety level increased when around police officers, and that she used public transportation to travel to work in 2017 and to doctor's appointments presently when her case manager was unavailable. The ALJ noted that Plaintiff reported a good relationship with her four adult children during a consultative examination, and by 2018, she was interacting well with friends and family.

Third, the ALJ found that Plaintiff had marked limitations in concentrating, persisting, or maintaining pace. [*Id.*]. The ALJ noted that Plaintiff testified that she had increased difficulty with her memory, that her mind wandered when watching television, that she reported losing objects, and that she had side effects of headaches and decreased vision from prescribed medication. The ALJ also detailed that Plaintiff reported in a function report that she was able to pay bills, count change, handle a savings account and use a checkbook/money orders, as well as that she reported auditory and visual hallucinations. Lastly, the ALJ found that Plaintiff had moderate limitations in adaption. [*Id.*]. Here, the ALJ detailed that Plaintiff testified that she lived alone and was independent in self-care and personal hygiene; as well as that Plaintiff cared for her cat, stopped caring for her grandchildren in 2016, and did not adapt well to change.

10

Plaintiff argues that the ALJ's step three determination is not supported by substantial evidence because the ALJ's finding of moderate limitations was inconsistent with Dr. Hopko's opinion. [Doc. 18 at 6]. Plaintiff underwent a consultative examination with Dr. Hopko on June 20, 2017 and he performed a clinical interview and a mental status examination. [Tr. 742–47]. Dr. Hopko found that Plaintiff "appears to fall into the borderline range of intellectual functioning," and that she "showed evidence of marked impairment in her short-term memory," marked impairment in her ability to sustain concentration, and moderate to marked impairment in her long-term and remote memory functioning. [Tr. 746]. Additionally, Dr. Hopko opined that Plaintiff's "current psychiatric state was slightly depressed," and that she showed "evidence of a marked impairment in her social relating and appears to be moderately impaired in her ability to adapt to change." [*Id.*]. Dr. Hopko assessed that Plaintiff appeared able to follow both written and spoken instructions, and that she had a work history that was reasonably stable until 2015. [*Id.*]. Lastly, Dr. Hopko diagnosed major depressive disorder, recurrent, with psychotic features, as well as rule out borderline intellectual functioning. [Tr. 748].

In the disability decision, during the RFC determination, the ALJ found Dr. Hopko's opinion "persuasive except for the marked limitations in social relating, because it is consistent with the objective evidence of record that showed the claimant's only marked limitations were in her ability to concentrate, persist or maintain pace." [Tr. 24]. Specifically, the ALJ noted that during the mental status examination, Plaintiff "successfully performed five iterations of serial threes, spelled the word 'world' forward and backwards, recalled two of three objects after a delay by threes, and performed arithmetic calculations without paper and pencil, but not multiplication." [*Id.*]. Additionally, the ALJ reviewed that Plaintiff reported that she had dropped out of school in ninth grade, that she had difficulties in school related to truancy, that she reported inpatient mental

11

health treatment in 2016 for two days due to a nervous breakdown but had not received outpatient mental health treatment, and she reported daily auditory and visual hallucinations.  [*Id.*].  Lastly, the ALJ stated that Plaintiff reported a twenty-year history of depression and anxiety related to childhood physical and sexual abuse by male family members.  [*Id.*].

### 1.    Understanding, Remembering, or Applying Information

Plaintiff challenges the ALJ's assessed moderate limitations in understanding, remembering, or applying information.  First, Plaintiff claims that "[t]he ALJ's statement that [Plaintiff] 'attends doctor's appointments on an independent basis' is incorrect; not only does [her] case worker take her to doctor's appointments . . . but [she] also stated that she needs to be reminded to go to the doctor and that she needs someone to accompany her."  [Doc. 18 at 7 (citing Tr. 253–54)].  Plaintiff also maintains that the ALJ's cited evidence about her ability to perform household chores does not "support the ALJ's implied presumption that [she] retains the ability to follow instructions."  [*Id.*].  Plaintiff notes the ALJ's citation to her testimony that she had increased difficulty with her memory, that she was losing objects, that she would sometimes forget to take her medications, and she sometimes took the wrong dose of medication by mistake.  [*Id.* (citing Tr. 20, 22–23)].

Moreover, Plaintiff asserts that the assessed moderate limitations are inconsistent with Dr. Hopko's opinion that she was markedly limited in her short-term memory, "which is encompassed in the functional area of 'understanding, remembering, or applying information.'"  [*Id.* at 8].  Therefore, Plaintiff maintains that "if the ALJ finds Dr. Hopko's opinion persuasive, notwithstanding the finding of a marked limitation in social relating, the ALJ should have concluded that [Plaintiff] has a marked limitation in understanding, remembering, or applying information."  [*Id.*].  Plaintiff provides several citations to the medical record which she claims are

12

consistent with a marked degree of limitation in this area of mental functioning.

The Commissioner responds that the ALJ identified substantial evidence to support her conclusion that Plaintiff had only moderate limitations in understanding remembering, or applying information, and that Plaintiff merely identifies conflicts in the medical record that do not affect whether the ALJ's finding is supported by substantial evidence. [Doc. 22 at 7–9]. Additionally, the Commissioner asserts that the ALJ "sufficiently explained why she found only moderate, not marked limitation in understanding, remembering, or applying information" when reviewing Dr. Hopko's opinion. [*Id.* at 11].

First, the Court notes that the issue of whether a claimant meets the requirements of a Listing is an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *see also Vardon v. Colvin*, No. 5:13-cv-2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner.") (citing 20 C.F.R. § 416.927(e)).

Next, Plaintiff argues that the ALJ should have concluded that she had a marked limitation in this area of mental functioning based on Dr. Hopko's opinion that Plaintiff was markedly limited in her short-term memory. In reviewing an ALJ's step three determination, the Court may also look elsewhere in the disability decision to support the ALJ's finding. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (rejecting argument that the ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial

13

evidence in the record).  While the ALJ did in fact find Dr. Hopko's opinion persuasive "except for the marked limitations in social relating," Plaintiff fails to acknowledge the ALJ's subsequent statement—that "the objective evidence of record . . . showed the claimant's only marked limitations were in her ability to concentrate, persist, or maintain pace."  [Tr. 24].  The ALJ then detailed that in the mental status examination, Plaintiff was able to perform five iterations of serial threes and recalled two of three objects after a delay by threes.  [*Id.*]; *see, e.g.*, *Hensley v. Berryhill*, No. CV 18-48-HRW, 2019 WL 1179390, at *4 (E.D. Ky. Mar. 13, 2019) (addressing consultative psychologist's opinion and noting that "Plaintiff does not challenge the ALJ's stated reasons for discounting Dr. Rigby's opinion; instead, he contends that the ALJ 'did not take these uncontradicted opinions . . . into account.' Plaintiff misconstrues what the law requires. The ALJ was under no obligation to accept Dr. Rigby's opinion wholesale, given that it lacked support in both his examination findings and the rest of the record").

Further, during the step three determination, the ALJ noted that "no [s]tate agency psychological consultant concluded that a mental listing is medically equaled."  [Tr. 20]; *see, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-00065-SKL, 2019 WL 1748512, at *7 (E.D. Tenn. Apr. 18, 2019) (finding substantial evidence to support the ALJ's determination that the plaintiff failed to show she met Listing 12.04, as the "ALJ sufficiently explained his decision not to assign controlling weight to Dr. Spalding's opinion" and the state agency consultants did not find that the plaintiff met any mental impairment listing).

Plaintiff, however, argues that the ALJ improperly relied upon her ability to attend doctor's appointments on an independent basis, as well as her ability to perform household chores.  With respect to Plaintiff's ability to attend doctor's appointments, the ALJ did acknowledge when assessing Plaintiff's social interaction, that she relied on her social worker for transportation to

14

doctor's appointments. [Tr. 20]. Additionally, Plaintiff fails to cite to any supporting authority that the ALJ's analysis regarding her ability to perform household chores did not support moderate limitations in the ability to understand, remember, or apply information. Rather, Plaintiff cites to several examples in the medical record which she claims are consistent with more than marked limitations in this area of mental functioning.

However, where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Here, the ALJ noted that Plaintiff lived alone, that she attended doctor's appointments—although choosing not to drive, and that she was able to perform household chores—although receiving help with family on certain occasions. *See, e.g., Edgington v. Berryhill*, No. 1:18-CV-1736, 2019 WL 2870523, at *22 (N.D. Ohio June 6, 2019) ("The Court finds substantial evidence supports the ALJ's determination Edgington has a less than marked restriction in understanding, remembering, and applying information. As the ALJ correctly notes, Edgington reported that, although it may take additional time, she is able to perform multi-step tasks such as preparing simple meals, performing household chores, shopping online, managing her checking accounts, and driving to medical appointments."), *report and recommendation adopted sub nom., Edington v. Berryhill*, 2019 WL 2896053 (N.D. Ohio July 3, 2019).

Therefore, the Court finds that the ALJ properly relied upon Plaintiff's daily activities in finding no more than moderate limitations in this paragraph B criteria. "The Court does not find that the ALJ mischaracterized Plaintiff's daily activities; but rather that she appropriately assessed the totality of Plaintiff's reported daily activities in reviewing the paragraph B criteria. Further, the ALJ noted that the state agency psychological consultants found

15

that Plaintiff's mental impairments did not meet or medically equal any of the Listings." *Delozier v. Saul*, No. 3:18-CV-197-DCP, 2019 WL 4647250, at *7 (E.D. Tenn. Sept. 24, 2019); *see also Rhome v. Comm'r of Soc. Sec.*, No. CV 18-1532, 2020 WL 1532332, at *1 (W.D. Pa. Mar. 31, 2020) ("Although Plaintiff asserts that the record contains evidence that should have led the ALJ to find that he has marked limitations in some of the above-listed areas of functioning, such evidence does not conclusively show marked or extreme limitations in Plaintiff's areas of functioning, and the Court cannot simply reweigh the evidence at this juncture in order to come to a different conclusion than that reached by the ALJ as discussed above.").

## 2.    Social Interaction

With respect to the ALJ's assessed moderate limitations in social interaction, Plaintiff claims that "the ALJ did not consider the 'complete picture' of Plaintiff's daily activities in conjunction with the kinds, extent, and frequency of the help and support she receives on a daily basis." [Doc. 18 at 11]. Plaintiff maintains that the ALJ's citations to the medical record in support of a moderate limitation in social interaction focus on her good relationships with "the people who make up her strict social setting and assist her with daily activities and important appointments." [*Id.* at 9].

Subsection 12.00(D)(1) instructs that when evaluating listings relating to mental impairments, the SSA will consider:

(1). General. Psychosocial supports, structured settings, and living arrangements, including assistance from your family or others, may help you by reducing the demands made on you. In addition, treatment you receive may reduce your symptoms and signs and possibly improve your functioning, or may have side effects that limit your functioning. Therefore, when we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you spend your time, and the effects of any treatment. This evidence may come from reports about your functioning from you or third

16

parties who are familiar with you, and other third-party statements or information. Following are some examples of the supports you may receive:

> a. You receive help from family members or other people who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone.
> . . .
>
> f. You receive assistance from a crisis response team, social workers, or community mental health workers who help you meet your physical needs, and who may also represent you in dealings with government or community social services.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(D)(1)(a), (f). Similarly, Subsection 12.00(D)(3) specifically details how the SSA will "consider the help or support" a claimant receives, including:

> a. We will consider the complete picture of your daily functioning, including the kinds, extent, and frequency of help and support you receive, when we evaluate your mental disorder and determine whether you are able to use the four areas of mental functioning in a work setting. The fact that you have done, or currently do, some routine activities without help or support does not necessarily mean that you do not have a mental disorder or that you are not disabled. For example, you may be able to take care of your personal needs, cook, shop, pay your bills, live by yourself, and drive a car. You may demonstrate both strengths and deficits in your daily functioning.
>
> b. You may receive various kinds of help and support from others that enable you to do many things that, because of your mental disorder, you might not be able to do independently. Your daily functioning may depend on the special contexts in which you function. For example, you may spend your time among only familiar people or surroundings, in a simple and steady routine or an unchanging environment, or in a highly structured setting. However, this does not necessarily show how you would function in a work setting on a sustained basis, throughout a normal workday and workweek. (See 12.00H for further discussion of these issues regarding significant deficits in adaptive functioning for the purpose of 12.05.)

*Id.* § 12.00(D)(3)(a)-(b); *see also id.* § 12.00F(3)(e) ("The degree of limitation of an area of mental functioning also reflects the kind and extent of supports or supervision you receive and the characteristics of any structured setting where you spend your time, which enable you to function.

17

The more extensive the support you need from others or the more structured the setting you need in order to function, the more limited we will find you to be . . . .").

In her step three analysis, the ALJ acknowledged that Plaintiff testified that she did not get along well with other people, that she relied on her family for assistance with household chores, and that she relied on her social worker for transportation to doctor's appointments and grocery shopping. [Tr. 20]. However, the ALJ also noted that Plaintiff had a good relationship with her family, used public transportation to travel to work in 2017 and to doctor's appointments at the present time when here case manager was unavailable, and that she reported a good relationship with her four adult children during her consultative examination with Dr. Hopko. [*Id.*]. Additionally, the ALJ noted that Plaintiff interacted well with friends and family in 2018. [*Id.*].

While Plaintiff claims that the ALJ failed to consider the level of support she receives, the ALJ acknowledged that she received assistance from both family members and her case manager. *See, e.g.*, *Withus v. Saul*, No. 18-CV-10923-VSB-JLC, 2019 WL 6906972, at *22 (S.D.N.Y. Dec. 19, 2019) ("The ALJ plainly considered the support Withus receives from her mother, as he extensively cited Withus's testimony and Flanagan's report differentiating the activities Withus can handle independently from those for which she needs assistance or reminders."). The Commissioner argues that Plaintiff has failed to demonstrate the level of restrictions contemplated by the applicable regulation; as, for example, no one in Plaintiff's family changed their work hours so that she would never be alone, she did not need to be reminded to eat, and her family did not administer her medication. *See* [Doc. 22 at 14]. While the Court agrees with Plaintiff that these are merely examples of support that an individual may receive, the Court also finds that the ALJ appropriately considered the level of support Plaintiff received from family members.

18

Moreover, the Court finds that the ALJ appropriately considered Plaintiff's relationship with her family when assessing moderate limitations in social interaction. *See, e.g.*, *Primmer v. Comm'r of Soc. Sec.*, No. 2:14-cv-2245, 2015 WL 9474691 at *2–3 (S.D. Ohio Dec. 29, 2015) (finding substantial evidence supported ALJ's determination of moderate limitations in social functioning where, although the claimant had difficulty around others and panic attacks, she was "able to go to the store with her sister-in-law, . . . attended doctor's appointments on a regular basis, . . . reported talking with others on a daily basis and regularly interacting with family"); *Harvard v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-2464, 2015 WL 506976, at *15 (N.D. Ohio Feb. 6, 2015) (holding substantial evidence supported the ALJ's finding of a moderate limitation in social function where "Plaintiff's testimony shows that he was social with a small group, including his immediate family"); *Gonzalez v. Comm'r of Soc. Sec.*, No. 13 11772, 2014 WL 3735249 at *12 (E.D. Mich. July 29, 2014) (finding substantial evidence supported ALJ's determination of moderate limitations in social functioning where, although the claimant avoided interpersonal relationships and isolated herself, she was able to interact successfully with people when shopping and using public transportation and treatment records indicated she was consistently cooperative and polite).

Plaintiff cites to a January 12, 2018 treatment note from her case manager where she stated that there were too many people in Kroger and it gave her anxiety [Tr. 3090]; a January 8, 2018 treatment note where she requested her case manager to go to her apartment because she was lonely [Tr. 3092]; a July 13, 2017 statement that she does not get out of her house much [Tr. 1302]; Dr. Hopko's assessed marked impairment in social relating [Tr. 746]; treatment records from May 2 and 11, 2017 stating that she had not been out of her house in three or four days [Tr. 477, 483]; a treatment note from March 9, 2017 reflecting that she reported her anxiety goes up when she used

19

public transportation [Tr. 510]; and an October 1, 2015 treatment note where she did not present with a talkative demeanor throughout the appointment [Tr. 625], among other medical records.

However, the Commissioner also cites to treatment records after Plaintiff's alleged onset date where Plaintiff's mood "was consistently described as euthymic and her affect was full and appropriate." [Doc. 22 at 14]; *see* [Tr. 475–97, 2962–85].[3] Further, the Commissioner details that the ALJ noted that Plaintiff generally reported in 2018 that she was interacting well with friends and family. For example, Plaintiff reported to her case manager on August 2, 2018 that she "has been getting along well with her family and friends," [Tr. 2962], as well as that she was getting along with her children and her friends on July 25, 2018 [Tr. 2964]. Additionally, Plaintiff stated on April 12 and 17, 2018 that she wished to spend more time with friends, although she did not currently have many friends [Tr. 3034, 3039].

Accordingly, although Plaintiff identifies evidence in the medical record which could potentially support finding a more severe restriction, substantial evidence supports the ALJ's determination that Plaintiff has a moderate restriction in interacting with others. *See, e.g.*, *Innocent v. Saul*, No. 1:18-cv-2391, 2020 WL 1031531, at *9 (N.D. Ohio Mar. 3, 2020) ("In light of the substantial evidence standard of review, the Court finds that the ALJ supported his determination of only a moderate limitation in interacting with others with substantial evidence. The ALJ applied the correct legal standards and provided enough support for his determination.").

---

[3] The Commissioner asserts that the cited "appointments that reference Plaintiff not being talkative were prior to Plaintiff's alleged onset date, and . . . even at the appointments where [she] was noted to not be talkative, she still had a generally friendly and happy demeanor and would answer the case manager's questions." [Doc. 22 at 14]; *see* [Tr. 392, 394–95, 400, 402, 406, 410, 412, 416].

### 3. Adapting or Managing Oneself

Plaintiff challenges the ALJ's finding of only moderate limitations in adaption, as she asserts that "[t]he evidence of record further establishes a great[er] limitation in the functional area of adapting or managing oneself." [Doc. 18 at 12]. Plaintiff cites to a June 5, 2018 treatment note where her speech was noted as loud and that she didn't sleep for thirty-six hours [Tr. 2976]; treatment notes on several occasions where she appeared disheveled [Tr. 475, 477, 481, 1302, 1304, 3112, and 3139];[4] and an April 5, 2017 treatment note stating that she was taking double the dose of her medication, as she had a difficult time understanding her prescription [Tr. 497].

However, the ALJ detailed that Plaintiff testified that she lived alone and was independent in self-care and personal hygiene, that she cared for her cat, and that she stopped caring for her grandchildren in 2016 and did not adapt well to change. [Tr. 20]. Elsewhere in the disability decision, the ALJ noted that Plaintiff was "friendly in her demeanor and . . . her appearance was typically well groomed," as well as that while "[s]he sometimes took the wrong does of medication by mistake," she "reported that her psychotropic medications was helping her to have clearer thoughts in October 2017." [Tr. 23].

Again, the Court finds that the ALJ's cited reasoning for finding moderate limitations in adaption is supported by substantial evidence. Although Plaintiff identifies several treatment records that could potentially support greater limitations, the ALJ reviewed her testimony that she lived alone, was typically well groomed during routine case management appointments, and that prescribed medication was helping her have clearer thoughts in response to her taking the wrong medication.

---

[4] The Court notes that Plaintiff again cites to several treatment records before her alleged onset disability date. *See* [Tr. 611, 615, 625, 683].

Ultimately, the ALJ properly relied on Plaintiff's documented daily activities and the subsequent discussion of Plaintiff's treatment notes and medical opinions to conclude that Plaintiff failed to meet the paragraph B criteria of Listing 12.04. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or equal any Listing, and Plaintiff's assignments of error do not constitute a basis for remand.

### B.     RFC and Step Five Determination

Plaintiff maintains that the ALJ's finding that she could perform "other work" that existed in significant numbers in the national economy is not supported by substantial evidence because the ALJ "should have included the limitation regarding Plaintiff being off task for one hour or more per day in her RFC analysis because the ALJ's decision states that Plaintiff has a marked impairment in concentration, persistence, and pace." [Doc. 18 at 16]. Additionally, Plaintiff claims that "[i]t is unclear whether the ALJ considered the fact that Plaintiff is right hand dominant in determining her RFC," as well as identifies several issues with the occupations that the ALJ found that Plaintiff could perform. [*Id.* at 17].

At step five, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform given the claimant's RFC and vocational factors, including age, education, and work skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Where the Commissioner relies upon VE testimony to demonstrate the existence of a substantial number of jobs that a claimant can perform, the VE must testify on the basis of the claimant's "residual functional capacity and . . . age, education, and work experience" in order to assess whether a claimant "can make an adjustment to other work." *See* 20 C.F.R. § 1520(a)(iv) & (v); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

22

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010) (internal citations omitted). Although the hypothetical question must accurately describe the claimant, there is no requirement that it must match the language of the RFC verbatim. *See Brock v. Comm'r of Soc. Sec.,* 368 F. App'x 622, 626 (6th Cir. 2010) (citation omitted) ("Further, a hypothetical question may be incomplete, yet still accurately portray a claimant's limitations.").

### 1.    Marked Limitation in Concentration, Persistence, or Pace

During the disability hearing, the ALJ presented the VE with a hypothetical question of an individual of the Plaintiff's age, education, and work experience, with identical limitations to Plaintiff's RFC. [Tr. 55]. The VE testified that this individual could not perform Plaintiff's past work, but that they could perform other work that existed in the national economy, including as a mail clerk, some assembly jobs—including as an assembler, and some production jobs—including as an inspector, surgical instruments. [Tr. 55–56].

However, the ALJ also presented several hypothetical questions to the VE that were not adopted, including the fourth hypothetical, where the ALJ asked the VE to "assume an individual of the claimant's age, education and work experience who can work with any of the limitations discussed . . . but in addition the individual would be off task for one hour or more per day due to her impairments or symptoms of her impairments," as well as that this individual would miss two days or more per month due to her symptoms of treatment and would require two or more additional breaks per day. [Tr. 57]. The VE testified that such an individual could not perform any work in the national economy, and that any of the added limitations would independently

23

eliminate such work.  [Tr. 58].

Plaintiff challenges the ALJ's failure to include a limitation requiring Plaintiff to be off task for one hour or more per day in the RFC analysis.  The Commissioner responds that "the ALJ accounted for Plaintiff's marked impairment in concentrating, persisting, or maintaining pace by limiting Plaintiff to work involving only simple instructions and tasks, where workplace changes were occasional and gradually introduced."  [Doc. 22 at 17].

The ALJ's RFC determination included that Plaintiff cannot have contact with the public, and can occasionally have contact with coworkers and supervisors, as well as limitations to simple instructions and tasks, where workplace changes are occasional and gradually introduced.  [Tr. 21]. "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."  *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *see Stanley v. Sec'y of Health & Human Servs.,* 39 F.3d 115, 118–19 (6th Cir. 1994) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  The ALJ or Plaintiff's counsel may question the VE with a hypothetical question containing a possible RFC that was not adopted.  *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("[U]se of a treating physician's opinion in a hypothetical by no means establishes that the ALJ accepted the treating physician's opinion, much less gave it controlling weight.  Allowing the ALJ to ask questions to reach an informed conclusion should be encouraged, not used against the ALJ on appeal.").

Plaintiff fails to provide any support for her argument that the ALJ was required to include the specific limitation regarding Plaintiff being off task for one hour or more per day in her RFC analysis, as this question was merely presented in a hypothetical question that was not adopted.

24

However, the question remains of whether the RFC determination adequately accounts for the assessed marked limitations in maintaining concentration, persistence, or pace.

In *Ealy v. Comm'r of Soc. Sec.*, the Sixth Circuit concluded that an RFC and hypothetical question to a VE that included the limitations of "simple repetitive tasks and instruction" failed to accurately represent a medical opinion that assessed limitations of "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d 504, 516 (6th Cir. 2010). As later clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), the problem in *Ealy* was that the RFC and hypothetical question "truncated the doctor's specific restrictions." *Id.* at 436–37. Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added).

Further, the Sixth Circuit has more recently held that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 249–50 (6th Cir. 2016) (holding the ALJ's finding that the plaintiff had moderate difficulties in concentration, persistence, or pace were reflected in the questions posed to the VE as the "limitation to simple, routine, or unskilled work" correlated to "(1) an inability to concentrate and short attention span, and (2) limited capacity for interaction with others to directly reflect Gibbens's moderate difficulties with concentration, persistence, and pace based on his

25

borderline intellectual capabilities").

It is clear that a limitation to simple, routine, and repetitive tasks "adequately conveys" a claimant's moderate limitations in maintaining concentration, persistence, and pace, where the medical opinions of record did not identify "any concrete functional limitations." *Smith-Johnson*, 579 F. App'x at 437; *see also Kepke*, 636 F. App'x at 635. In light of the lack of applicable Sixth Circuit authority addressing marked limitations, however, the Court cannot find that the RFC limitation and corresponding hypothetical that Plaintiff can understand, remember and carry out simple instructions and tasks, where workplace changes are occasional and gradually introduced, is sufficient to adequately convey Plaintiff's marked limitations in maintaining concentration, persistence, and pace.[5] *See, e.g.*, *Music v. Comm'r of Soc. Sec.*, No. 3:18-CV-1563, 2019 WL 3220130, at *3 (N.D. Ohio July 17, 2019) ("Here, the ALJ found *marked* limitations in concentrating, persisting, or maintaining pace. The severity exceeds that in *Ealy, Gibbons v. Commissioner of Social Security*, and *Kepke v. Commissioner of Social Security* (all moderate).") (internal citations omitted); *see also Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that psychiatrist's opinion that claimant had "moderate, but not marked" limitations in her ability to maintain attention and concentration was accommodated by RFC limiting claimant to "simple tasks").

While Dr. Hopko did not opine any specific, durational limitations, he found that Plaintiff "showed evidence of marked impairment in her short-term memory . . . marked impairment in her ability to sustain concentration . . . [and] evidence of moderate to marked impairment in her long-

---

[5] In their briefing, neither party cites to an applicable case addressing whether similar limitations in a claimant's RFC adequately conveyed marked limitations in their ability to maintain concentration, persistence, or pace.

26

term and remote memory functioning," he did not assess any concrete functional limitations. *See* [Tr. 746]. As detailed above, the ALJ specifically found the opinion persuasive and that the "objective evidence of record" supported Plaintiff's "marked limitations . . . in her ability to concentrate, persist or maintain pace." [Tr. 24]. Moreover, when reviewing the opinions of state agency psychological consultants Joseph Leizer, Ph.D. and Mark Berkowitz, Psy.D., the ALJ again found that the opinions were less persuasive because it was inconsistent with "Helen Ross McNabb treatment notes of only moderate limitations when the claimant was complaint with treatment, except for marked limitations in her ability to concentrate, persist, or maintain pace." [*Id.*].

Therefore, while the ALJ found that Plaintiff had marked functional limitations related to her short-term memory and concentration abilities, it is unclear whether these functional limitations are addressed by the RFC determination. *See, e.g.*, *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2007) (finding a hypothetical question limiting the plaintiff to "unskilled" and "low stress" jobs did not adequately reflect finding that the plaintiff had a "'marked' limitation in ability to concentrate or persist at a task until timely completion"). In support, the Court notes the decision of the Northern District of Ohio in *Music v. Commissioner of Social Security* finding that "[t]he RFC failed to account for all of [the claimant's] limitations identified by the ALJ," where despite finding marked limitations in concentration and persistence, the ALJ failed to "include any durational limitations." 2019 WL 3220130 at *3; *see, e.g.*, *Viles v. Colvin*, No. 3:14-CV-0534-SI, 2015 WL 1393296, at *11 (D. Or. Mar. 25, 2015) ("The Court finds that the restriction to 'simple and repetitive tasks,' without more, is insufficient to incorporate Plaintiff's 'marked' limitations in concentration, persistence, or pace. Although limiting a claimant to simple and repetitive tasks may, under some circumstances, properly incorporate 'moderate' limitations in concentration, persistence, and pace, 'marked' limitations require

27

more.") (collecting cases in support).

Accordingly, the Court cannot find that the RFC and corresponding hypothetical adequately accounts for Plaintiff's marked limitations in maintaining concentration, persistence, or pace. Therefore, Plaintiff's case will be remanded for the ALJ to fashion an RFC that incorporates all of Plaintiff's mental limitations, as well as that any hypotheticals posed to the VE relied upon in support must adequately account for Plaintiff's limitations.

### 2. Plaintiff's Right Upper Extremity

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, as it is "silent as to what, if anything, Plaintiff is able to do with her right upper extremity" and "[i]t is unclear whether the ALJ considered the fact that Plaintiff is right hand dominant in determining her RFC." [Doc. 18 at 17]. Plaintiff notes that she is right-handed, but in the RFC determination, the ALJ stated only that she can "frequently reach, handle, and finger with the left upper extremity." [Tr. 21].

As Plaintiff details, in the disability decision, the ALJ noted that Plaintiff "complained of bilateral neck pain with tingling in her upper extremities to her primary care physician in May 2018" [Tr. 18]; that she "complained of pain in her right shoulder in 2016, status post a rotator cuff repair in 2011" and "[a] MRI of the right shoulder showed a small partial thickness tear of the supraspinatus tendon, biceps tendinosis, mild bursitis and moderate degenerative changes of the acromioclavicular join[t]" [Tr. 23]; and "[h]er deep tendon reflexes (DTR) could not be elicited in the upper extremities" [Tr. 24].

Plaintiff then challenges the ALJ's finding that she could perform the jobs listed by the VE. First, Plaintiff claims that it is unclear what position the VE was referring to when he stated that Plaintiff could perform the position of "Mail Clerk," DOT number 209.687-010. *See* [Tr. 56].

28

Plaintiff submits that this DOT number is associated with the Checker II job title, which is sedentary and has an SVP of 4.  [Doc. 18 at 17].  Plaintiff notes that a mail clerk position does exist in the DOT, but Plaintiff asserts that she would be unable to perform this position because the job description includes duties such as "opens envelopes by hand or machine" and "may fold letters or circulars in insert in envelopes" and she is right-handed.  [*Id.*].

Next, Plaintiff claims that the physical demands of the identified position of Inspector, Surgical Instruments "are inconsistent with the hypothetical question posed to the VE and subsequently, the ALJ's RFC determination," as the ALJ's RFC determination included a limitation to frequent handling and fingering, while the "Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles" details that this position requires "constant" fingering and handling.  [*Id.* at 18].  Lastly, Plaintiff claims that she would unable to perform the identified Hospital Supply Assembler job "because the job description includes duties requiring the use of both upper extremities," she is right-handed, "and she would not be able to perform such tasks with just the left upper extremity."  [*Id.*].  Plaintiff submits that although the VE testified that his testimony was consistent with the DOT, except that the DOT does not have information regarding time off, extra breaks, or partial ranges of physical demand, numerous unresolved conflicts exist between the DOT and the VE's testimony.

The Commissioner responds that the alleged "silence" regarding Plaintiff's right upper extremity "is simply a finding that Plaintiff had no limitation in her right arm."  [Doc. 22 at 17].  The Commissioner maintains that although Plaintiff argues there "were unresolved conflicts with the occupations of mail clerk and production (surgical instruments), this does not invalidate the ALJ's finding," as the ALJ properly found that Plaintiff could perform the job of hospital supply assembler.  [*Id.* at 18].  The Commissioner argues that "the ALJ found no limitation in Plaintiff's

29

right hand, and the [VE] testified that Plaintiff could perform that job with the limitations in the RFC." [*Id.*].

Ultimately, as the Court has already determined that Plaintiff's case will be remanded for the ALJ to reconsider the RFC determination and any corresponding hypothetical, the Court declines to address Plaintiff's argument regarding her right upper extremity. On remand, the ALJ is advised, but not directed, to consider Plaintiff's arguments regarding her right shoulder pain, the fact that she is right-handed, and potential conflicts between the identified jobs (if applicable) and the DOT.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**.   This case will be **REMANDED** to the SSA for a redetermination of Plaintiff's RFC that incorporates all of Plaintiff's mental functional limitations, and any corresponding hypothetical posed to the VE must adequately account for the assessed limitations.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

30